**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| **ANN LEDFORD, individually and as next** | ) | |
| **friend and mother of  Johnathan Binkley,** | ) | |
| **Deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | **:** | **Case No. _____** |
| | ) | |
| **KNOX COUNTY, TENNESSEE,** | ) | **JURY DEMANDED** |
| **KNOX COUNTY SHERIFF'S OFFICE,** | ) | |
| **Individually and in his official capacity,** | ) | |
| **KNOX COUNTY SHERIFF TOM SPANGLER**, ) | |
| **JAMES BRADSHAW, Individually and** | ) | |
| **in his official capacity as a Sheriff's Deputy,** | ) | |
| **COREY CAMPBELL, Individually and** | ) | |
| **in his official capacity as a Sheriff's Deputy,** | ) | |
| **PAUL BURNETT, Individually and** | ) | |
| **in his official capacity as a Sheriff's Deputy,** | ) | |
| **CLAY HARRELL, Individually and** | ) | |
| **in his official capacity as a Sheriff's Deputy,** | ) | |
| **ZACH DOSS, Individually and in his** | ) | |
| **official capacity as a Sheriff's Deputy,** | ) | |
| **SHANE MAY, Individually and in his** | ) | |
| **official capacity as a Sheriff's Deputy,** | ) | |
| **GAVIN BALES, Individually and in his** | ) | |
| **official capacity as a Sheriff's Deputy,** | ) | |
| **CHRISTIAN GOMEZ, Individually and** | ) | |
| **in his official capacity as a Sheriff's Deputy,** | ) | |
| **NATHAN STACHEY, Individually and** | ) | |
| **in his official capacity as a Sheriff's Deputy,** | ) | |
| **DENNIS SOSVILLE, Individually and** | ) | |
| **in his official capacity as a Sheriff's Deputy,** | ) | |
| **DUSTIN FARMER, Individually and** | ) | |
| **in his official capacity as a Sheriff's Deputy,** | ) | |
| **DENIFE JONES, Individually and in his** | ) | |
| **official capacity as a Sheriff's Deputy, and** | ) | |
| **BRADLEY FINLEY, Individually and** | ) | |
| **in his official capacity as a Sheriff's Deputy,** | ) | |
| **JOHN DOES I-X, Individually and in their** | ) | |
| **Official capacity,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff Ann Ledford, individually and as next friend and mother of Johnathan Binkley, deceased, through counsel, and for cause of action against these Defendants, respectfully states as follows:

1.     This is a civil rights, personal injury, and wrongful death action for the actions of Knox County, Tennessee, the Knox County Sheriff's Office, Knox County Sheriff Tom Spangler in his individual and official capacity, the individually named defendants in their individual and official capacities as Sheriff's deputies, and other unknown employees and/or agents of Knox County, Tennessee and the Knox County Sheriff's Office for using excessive force against Johnathan Binkley.  Defendants used excessive force and violated Mr. Binkley's constitutional rights by repeatedly striking him; pressing him to the ground by sitting, kneeling, and/or using their own body-weight to hold him down; and "hog-tying" him in the prone position for an extended period of time, during which time Mr. Binkley could not breathe, became lethargic, lost consciousness, and was suffering from an obvious medical emergency, until his condition steadily deteriorated and he died at the scene.

2.     Although the immediate cause of Mr. Binkley's death listed on the Final Autopsy Report was drug intoxication, exacerbated by his cardiovascular disease and obesity, those were readily ascertainable and treatable medical conditions, and Mr. Binkley's death was proximately caused by acts and omissions by or attributable to Knox County, Knox County Sheriff's Office, Knox County Sheriff Tom Spangler and the individually named defendants, for their objective unreasonableness, use of excessive force against, and deliberate indifference to Mr. Binkley.  Had Defendants not used excessive force and had Defendants not been deliberately indifferent to his

2

condition and obvious distress, especially after he was already subdued and restrained, Mr. Binkley would have survived.

3.     Plaintiff's claims under 42 U.S.C. § 1983 and state law arise, among other things, out of Defendants' use of excessive force against Mr. Binkley, including pinning him to the ground and "hog-tying" him after he was already subdued and restrained, which led to Mr. Binkley's death and deprived him of his clearly established rights guaranteed to him under the Constitution and the laws of the United States and the State of Tennessee.   Defendants violated the rights of Mr. Binkley under the Fourth and Fourteenth Amendments of the United States Constitution and the Constitution and laws of Tennessee when they knowingly and with objective unreasonableness and deliberate indifference to his constitutional rights: (i) used excessive force against Mr. Binkley after he was already subdued and/or restrained, including by pressing him against the ground with their body weight, kicking him, and hog-tying him while he was already otherwise restrained; and (ii) failed to provide proper monitoring and treatment of Mr. Binkley when he was suffering from obvious injuries, including a head laceration, potential drug overdose, and asphyxiation, such that his condition further deteriorated after the Defendants' use of excessive force, ultimately causing extensive physical and emotional pain and suffering and, his death.   All Defendants acted under color of state law and proximately caused the deprivation of Mr. Binkley's federally protected and state law rights.

## PARTIES

4.     Plaintiff Ann Ledford is an adult citizen of the United States of America and a resident of the State of Tennessee and is the mother and next friend of Johnathan Binkley, deceased. Plaintiff Ann Ledford sues the Defendants for all damages recoverable under state and federal law

3

on behalf of herself and on behalf of her deceased son, Johnathan Binkley, arising from his death.

5.     Plaintiff Ann Ledford brings this action in accordance with Tenn. Code Ann. §§ 20-5-106, 20-5-107, 20-5-113, and other relevant and applicable statutes and common law, as next friend and mother of Johnathan Binkley, deceased.

6.     Defendant, Knox County, Tennessee, is a governmental entity created under the laws of the State of Tennessee.   Among its other functions, the Defendant Knox County operates and maintains a law enforcement agency, the Knox County Sheriff's Office (KCSO).   Defendant Knox County is responsible for ensuring the establishment and enforcement of rules, regulations, policies, procedures, and customs for the Knox County Sheriff's Office, including training, supervision, and discipline of law enforcement deputies.   Knox County does not have immunity for violating the civil rights of citizens and has waived sovereign immunity for the acts and/or omissions of its employees set forth herein pursuant to the Tennessee Governmental Tort Liability Act, T.C.A. § 29-20-10, *et seq.*, and T.C.A. § 8-8-302.   Knox County is liable for its own conduct and the acts and omissions of its elected officials, employees, agents, and contractors, including the individually named Defendants, by virtue of the fact that they acted in conformity with the policies, practices, and customs of Knox County.   Defendant Knox County was at all times material hereto under a duty to run its policing activities in a lawful manner so as to preserve the peace of Knox County and to preserve to its citizens the rights, privileges and immunities guaranteed and secured to them by the constitution and the laws of both the United States and the State of Tennessee.

7.     Defendant Knox County Sheriff's Office (also known as Knox County Sheriff's Department) (hereinafter referred to as KCSO) is a division of Knox County and is charged with the law enforcement responsibilities of Knox County, Tennessee.   The KCSO, by and through

4

Sheriff Tom Spangler and other deputies of the KCSO, was at all times material hereto under a duty to run its policing activities in a lawful manner so as to preserve the peace of Knox County and to preserve to its citizens the rights, privileges, and immunities guaranteed and secured to them by the constitution and the laws of both the United States and the State of Tennessee.

8.     Defendant Sheriff Tom Spangler is the Sheriff of Knox County (and was at all relevant times).  As Sheriff of Knox County, Defendant Spangler is the chief law enforcement deputy and final policymaker for the Knox County Sheriff's Office and Knox County, who is responsible for the establishment and enforcement of the policies and customs of the Knox County Sheriff's Office.   Further, as Sheriff of Knox County, Defendant Spangler is responsible for the hiring, training, supervision, and discipline of the law enforcement deputies and other employees, agents, and contractors of the KCSO.   Defendant Spangler is under a constitutional duty to run the policing activities of the KCSO in a lawful manner and to preserve the rights, privileges and immunities guaranteed and secured to citizens by the constitutions and laws of the United States and the State of Tennessee.   At all times material hereto, Sheriff Tom Spangler was acting under color of state law.   Sheriff Tom Spangler is sued individually and in his official capacity as Sheriff of Knox County, Tennessee.

9.     Defendants James Bradshaw, Corey Campbell, Paul Burnett, Clay Harrell, Zach Doss, Shane May, Gavin Bales, Christian Gomez, Nathan Stachey, Dennis Sosville, Dustin Farmer, Denife Jones, and Bradley Finley (collectively "KCSO Individual Defendants") are members of the KCSO, and based on information and belief, adult resident citizens of Knox County, Tennessee. At all relevant times, these Defendants were acting by virtue of their positions as law enforcement officials of the KCSO and under the color of state law.   These Defendants either directly

participated in the use of excessive force against Mr. Binkley or failed to intervene to prevent the use of excessive force against him. These Defendants are sued individually and in their official capacities as members of the KCSO.

10. Defendants John Doe I-X (collectively the "John Doe Defendants") were at all relevant times agents, employees, deputies, contractors and/or supervisors of Knox County, the KCSO, Sheriff Spangler, and/or other persons acting under the control and direction of Knox County, Sheriff Spangler, and/or the KCSO, and were acting in the course and scope of their agency or employment with Knox County and/or the KCSO. At the present time, the names and identities of these persons are not currently known or knowable to the Plaintiff after reasonable inquiry and notice. In particular, Plaintiff's decedent, Mr. Binkley, suffered injuries that lead to his death and, therefore, he cannot assist the Plaintiff in identifying the names and identities of the persons who caused injuries to him. The Plaintiff, by and through counsel, is still in the process of identifying other relevant documents that may identify the other individuals who contributed to Mr. Binkley's injuries and death. Therefore, the Plaintiff submits that she has been diligent in attempting to identify all responsible parties in this action and that the failure to name other potentially responsible parties is through no fault of the Plaintiff.

## JURISDICTION AND VENUE

11. This cause of action arises out of an incident which occurred between Johnathan Binkley and members of the KCSO on July 27, 2019, beginning at approximately 10:05 p.m. near 5303 Brownlow Road, Knoxville, Tennessee 37938 in Knox County, Tennessee.

12. Venue lies with this Court pursuant to 28 U.S.C. § 1391, as all the acts or omissions which give rise to this cause of action occurred within this district, and based on information and

6

belief, all the Defendants are residents of and/or conduct business in this district. Jurisdiction lies with this Court pursuant to federal question jurisdiction, 28 U.S.C. §§ 1331 and 1343, based on the claims brought under 42 U.S.C. § 1983, 42 U.S.C. § 1988, and the Fourth and Fourteenth Amendment of the Constitution to the United States of America. Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide claims arising under state law pursuant to 28 U.S.C. § 1367.

13. Each and every act of Defendants was performed under the color of state law and by virtue of the constitutions, statutes, ordinances, regulations, customs and usages of the United States of America, the State of Tennessee, the County of Knox, and under the authority of their positions as law enforcement deputies for such state and county.

14. All the wrongs complained of herein occurred within this jurisdiction and within the applicable statute of limitations governing this action and this Court has jurisdiction.

## FACTUAL BACKGROUND

15. On July 27, 2019, approximately 13 deputies were believed to be at the scene of the subject incident when excessive force was used against Mr. Binkley and he subsequently died, including: James Bradshaw, Corey Campbell, Paul Burnett, Clay Harrell, Zach Doss, Shane May, Gavin Bales, Christian Gomez, Nathan Stachey, Dennis Sosville, Dustin Farmer, Denife Jones, and Bradley Finley. Additionally, based on information and belief, some of these deputies were being trained during the subject incident (Defendant Burnett, Doss, Sosville and Bales) by more senior deputies on the scene, including but not limited to Defendants Campbell, Harrell, Stachey, and May.

16. Based on contemporaneous bodycam videos, the following facts occurred on or

7

about July 27, 2019:

a.  At the time of the incident, Mr. Binkley was a 35-year old, single male.

b.  At approximately 9:40 p.m., Johnathan Binkley and a female companion were parked in a truck in or near Sterchi Hills Park after-hours. After one of the KCSO deputies approached Mr. Binkley's truck shouting "Sheriff's Office," Mr. Binkley drove away from the park, and some of the deputies began to pursue Mr. Binkley and his companion.   The pursuit ended at approximately 10:05 p.m. near 5303 Brownlow Road, Knoxville, Tennessee 37938, in Knox County, Tennessee, when Mr. Binkley drove down a dead-end road and into a vacant lot where his vehicle stopped, evidently because it became lodged on a tree stump.

c.  After Mr. Binkley's vehicle stopped, multiple KCSO deputies began approaching the truck with their guns drawn.

d.  The deputies then ordered Mr. Binkley to show his hands and to get out of the truck.

e.  Mr. Binkley complied with the deputies' request and stretched his empty hands out of the driver's side window.   But, because the driver's side door of the truck was up against a tree, evidently, it was not possible for the driver's door to be opened for Mr. Binkley to get out.

f.  Deputy Harrell had gotten into the vehicle on the passenger side after removing the female companion from the vehicle and while Mr. Binkley was complying with orders to put his hands out the driver's side window; Deputy Harrell struck Mr. Binkley and yelled for him to get out of the vehicle.

8

g.     The KCSO deputies continued to tell Mr. Binkley to get out of the vehicle, but there was no easy way for Mr. Binkley to get out, and further, Mr. Binkley was trying to tell the deputies that he was hurt.

h.     While the KCSO deputies were yelling for Mr. Binkley to get out of the vehicle, two or more KCSO deputies began to force Mr. Binkley out the small and partially closed driver's side window, including but not limited to Defendant Bradshaw.   Because Mr. Binkley was a large individual, it was difficult for him to fit through the driver's side window.[1]   While at least one deputy was located outside the driver's side door attempting to pull Mr. Binkley out of the driver's side window, another deputy within the truck began pushing Mr. Binkley out of the window.   During this process, Mr. Binkley's leg became lodged in the truck and is eventually forced loose by a KCSO deputy.   The deputies squeezed his body out of the window.

i.     Mr. Binkley was doing his best to comply with the deputies demands during the time period referenced above and could be heard to say and repeat "I'm sorry."

j.     After being pulled through the small truck window, Mr. Binkley fell to the ground below, was rolled onto his stomach on the ground nearby, and was handcuffed behind his back.   During this time, deputies asked Mr. Binkley whether he was armed, searched him, and determined that he was not.   At this point, it was clear that Mr. Binkley was not a threat.

k.     Mr. Binkley appeared dazed, was bleeding, and had visible lacerations on

---

1 Mr. Binkley was approximately 5 ft. 11 inches tall and weighed approximately 280 lbs.

his face.

l.      Although Mr. Binkley was restrained and handcuffed, at various times thereafter, multiple KCSO deputies pressed Mr. Binkley's face into the ground, pressed one or both of their knees on him, kicked him, and pressed their body weight down on him.

m.      During this period, none of the deputies intervened to stop any of the other deputies from pressing Mr. Binkley's face into the ground, pressing one or both of their knees on him, kicking him, and/or putting their body weight on and pressing down on Mr. Binkley.

n.      While Mr. Binkley was handcuffed behind his back and lying face down on the ground, the KCSO deputies ordered Mr. Binkley to roll over to his right side and to bring his knees to chest, but Mr. Binkley did not respond or move.

o.      Particularly, considering how Mr. Binkley was handcuffed, the positioning of his clothes (where his shorts had fallen to around his knees after being pulled out of the truck window), and his visible injuries and condition, Mr. Binkley was unable to stand on his own.

p.      The KCSO deputies then tried to force Mr. Binkley to stand up, swore at him repeatedly, until they ultimately dragged his limp body a few feet. During this time, Mr. Binkley was only able to mumble and groan.   The KCSO deputies then pulled him up to his knees and forcibly pulled his head back.

q.      The deputies again tried to pull and force Mr. Binkley (who was still handcuffed behind his back) to stand up. The deputies pulled Mr. Binkley's shorts

up from around his knees, while another deputy yelled at Mr. Binkley, who continued to moan and groan; Mr. Binkley is kneed in the side several times.

r.     The KCSO deputies then ordered Mr. Binkley to stop moving; however, at this time Mr. Binkley was just crying out in pain while restrained.   The KCSO deputies then tried again to pull him up, pick him up, and carried him closer to the road.   During this time, Mr. Binkley continued moaning in pain.

s.     Once Mr. Binkley was moved closer to the road and while he was still restrained with handcuffs behind his back, he was put on the ground face down and held by three deputies.   While Mr. Binkley was trying to raise his head up and was struggling to breathe, his head was held down and his face pressed into the gravel and dirt by one of the KCSO deputies for an extended period of time.

t.     During this period, none of the other deputies intervened to stop the deputy from pressing Mr. Binkley's face into the ground, which was making it difficult for Mr. Binkley to breathe.

u.     One of the deputies then noticed Mr. Binkley's difficulty breathing and said: "He's got a big belly; roll him on his side so he can breathe."

v.     However, instead of rolling Mr. Binkley on his side so that he could breathe, deputies instead held Mr. Binkley to the ground and put leg restraints on him. These restraints were then connected to his handcuffs, forcing Mr. Binkley into a prone position and hog-tied, where he was lying on his stomach with his arms and legs tightly pulled behind him.   As reflected in the screenshots below from the bodycam videos:

11





w.    Immediately after Mr. Binkley was hog-tied, Mr. Binkley tried to roll from side to side, crying out, and struggling for breath.

x.    Instead of assisting in any manner, one or more of the KCSO deputies tightened the restraints, making it even more difficult for Mr. Binkley to move and be able to breathe. The deputies then left him in this position for an extended period of time, watching as Mr. Binkley continued to struggle to breathe.

y.    Mr. Binkley was hog-tied in this agonizing position for approximately seven minutes.

z.    Further, while Mr. Binkley was hog-tied and his face was again pressed into

12

the dirt and gravel while he was trying to breathe. Many KCSO deputies were present and standing around at the scene watching, including multiple deputies in training:



aa.     During this period, none of the deputies intervened by removing the hog-tie, loosening it, or positioning Mr. Binkley so that he could breathe without distress.

bb.     Moreover, while Mr. Binkley was in great distress, another KCSO deputy dropped his knee down on Mr. Binkley, placed his weight on him, making it even more difficult for him to breathe.   The deputy asked Mr. Binkley for his name and date of birth.   Mr. Binkley was barely able to give his name and struggled to say his date of birth.   A deputy continued to hold his knee and press his weight on Mr. Binkley's back for an extended period of time.   During this period, many of the other KCSO deputies continued to stand nearby, watching Mr. Binkley struggle to breathe.

cc.     After being hog-tied for more than four minutes, Mr. Binkley was motionless.   Although the deputies yelled at him and clapped in his face, Mr. Binkley was entirely unresponsive.

dd.     At some point, some of the KCSO deputies rolled Mr. Binkley onto his back, began to "sternum rub" him, and eventually, while Mr. Binkley was still unresponsive, administer Narcan.   Mr. Binkley was still hog-tied at this time.   Shortly thereafter, the KCSO deputies were unable to find a pulse.

ee.     After a pulse was no longer detectable and after Mr. Binkley had been unconscious for at least three minutes, the KCSO deputies finally removed his leg restraints.   Not long after, Mr. Binkley had turned purple / blue according to one of the deputies.

ff.     Later after Mr. Binkley was unconscious and no longer has a pulse, the KCSO deputies removed Mr. Binkley's handcuffs from behind his back and re-cuffed his hands in front of his chest.   Some of the deputies then administered an additional dose of Narcan and attempted chest compressions.

gg.     Sometime around 11:05 p.m., Mr. Binkley died at the scene.

17.     As a direct and proximate result of the foregoing events, Mr. Binkley was officially pronounced dead on July 27, 2019 approximately 42 minutes after he was hog-tied, at the scene of the subject incident.

18.     Knox County, Tennessee had non-delegable constitutional duties to ensure that Mr. Binkley was seized using, at most, only reasonable force under the circumstances and that he was properly monitored, evaluated, and treated and that the Knox County Sheriff's Office and that

14

its agents and employees provided constitutionally adequate services to Mr. Binkley. However, Knox County had policies, practices and customs in place which failed to ensure that the protections of citizen's constitutional rights were protected during use of force applications by failing to properly screen, train, and supervise its officers. Therefore, Knox County is liable for any acts and omissions of the KCSO Individual Defendants and the John Doe Defendants performed pursuant to the policies, practices, and customs of Knox County.

19. In particular, this event involved multiple officers from Knox County, including both rookie officers and training officers. The sheer number of officers involved and their positions within Knox County illustrate that the conduct of the KCSO Individual Defendants on the scene was in accordance with the policies, practices, and/or customs of Knox County as it involved FTO officers training Rookie officers. Further, because this case involved an in-custody death, this matter should have been extensively investigated by Internal Affairs to determine whether the conduct of the officers complied with the policies, practices and customs.

20. Upon review of the deputies' bodycam videotapes, it is clear that the KCSO Individual Defendants violated numerous nationally-accepted police standards and policies and used excessive force, failed to intervene, and failed to properly monitor Mr. Binkley. Despite these obvious and glaring constitutional violations and violation of nationally-accepted police standards, based on information and belief, Knox County and KCSO failed to discipline, reprimand, suspend, or terminate the KCSO Individual Defendants and found that all of their actions complied with the Knox County's and the KCSO's policies, practices and customs.

21. At all times material hereto, the deputies of the KCSO were acting in their official capacities and by virtue of their positions as law enforcement deputies of the Knox County

Sheriff's Office.

22.     As a result of the above referenced acts and omissions, Mr. Binkley's civil rights were violated, and he suffered severe and significant physical and emotional injuries for which the Defendants are jointly and severally liable.

23.     As a result of the above referenced acts and omissions, Mr. Binkley's civil rights were violated, and he suffered a wrongful death for which the Defendants are jointly and severally liable.

24.     As a result of the above referenced acts and omissions, the decedent, Plaintiff, and all other heirs of the decedent sustained the damages and losses sought herein for which the Defendants are jointly and severally liable.

## CAUSES OF ACTION

### Count I: Federal Constitutional Violations, Including 42. U.S.C. § 1983
### (Against KCSO Individual Defendants, John Doe Defendants,
### and Knox County, Tennessee)

Plaintiff hereby incorporates, in their entirety, each and every paragraph of this Complaint and by reference make said Paragraphs a part hereof as if fully set forth herein.

25.     Plaintiff avers that objectively unreasonable and excessive force was used against Mr. Binkley when these Defendants, among other things: forced Mr. Binkley, who was unable to exit the truck from the blocked driver's side door, out of the truck by pushing (from the passenger's side of the truck) and pulling him (from the driver's side of the truck) out of the small and partially closed, driver's side window.   During this period, Mr. Binkley's leg became lodged in the vehicle; after it was finally dislodged, the KCSO Individual Defendants forced Mr. Binkley out of the truck window and caused him to fall onto the ground below.

26.     Plaintiff avers that objectively unreasonable and excessive force was also used

16

against Mr. Binkley when these Defendants, among other things: held Mr. Binkley to the ground by sitting, kneeling, and/or using their own body-weight to hold Mr. Binkley down; and kicked Mr. Binkley while he was laying on the ground.

27.     Plaintiff avers that objectively unreasonable and excessive force was also used against Mr. Binkley when these Defendants, among other things: hog-tied Mr. Binkley, tying his hands and his feet together behind his back while he was laying on his stomach on the ground; and after Mr. Binkley was moving his head around attempting to breathe while being hog-tied on his stomach, tightened the hog-tie, such that Mr. Binkley began suffering from positional asphyxia

28.     Further, during the time that the deputies were using excessive force against Mr. Binkley, the other deputies failed to intervene and/or take reasonable measures to protect Mr. Binkley's constitutional rights from being violated.

29.     Plaintiff avers that all the KCSO Individual Defendants acted in concert by using objectively unreasonable and excessive force under the circumstances to restrain Mr. Binkley, particularly by hog-tying him and pressing their body weight down on him, when he had already been handcuffed, subdued, and/or did not pose an immediate threat.

30.     By being present at the scene, watching Mr. Binkley's constitutional rights be violated, failing to intervene, and failing to take reasonable measures to protect Mr. Binkley from the other deputies' use of unconstitutional excessive force, the other deputies at the scene are also liable for violating Mr. Binkley's constitutional rights.

31.     These Defendants committed the above described actions and/or omissions under the color of state law and by virtue of their authority as Sheriff's Deputies of the Knox County Sheriff's Office and substantially deprived Johnathan Binkley of his rights, privileges and

17

immunities guaranteed to him as a citizen of the United States in violation of 42 U.S.C § 1983, and deprived Mr. Binkley of the rights guaranteed to him by the Fourth and Fourteenth Amendment to the United States Constitution including, but not limited to:

    a.    The right to freedom from unreasonable seizure of his person;

    b.    The right to freedom from the use of unreasonable, unjustified, and excessive force;

    c.    Freedom from cruel and unusual punishment;

    d.    Freedom from summary punishment;

    e.    Failure to intervene and stop the violation of Mr. Binkley's constitutional rights;

    f.    The right to freedom from deprivation of liberty without due process of law;

    g.    The right to receive medical attention pursuant to the Fourteenth Amendment of the U.S. Constitution; and

    h.    The right to freedom from arbitrary governmental activity which "shocks the conscience" of a civilized society in violation of his substantive due process rights;

32.    Further, pursuant to applicable law, Defendant Knox County is liable for the acts or failure to act of any Knox County deputy and may be held jointly and severally liable for any such resulting injuries, losses, or damages.

33.    As a direct and proximate result of the Defendants' acts and/or omissions, Johnathan Binkley sustained personal injuries and wrongfully died, sustaining the damages and losses sought herein.

## Count II: Federal Constitutional Violations
### (Against Defendants Knox County, Tennessee, Sheriff Spangler, and KCSO)

Plaintiff hereby incorporates, in their entirety, each and every paragraph of this Complaint and by reference make said Paragraphs a part hereof as if fully set forth herein.

34.     At all times material hereto, the Defendants involved were acting by virtue of the laws of the State of Tennessee and by virtue of their positions as law enforcement deputies or employees of the KCSO.

35.     The Defendants, by and through their elected and appointed officials, permitted, encouraged, and tolerated an official pattern, practice or custom of its police deputies violating the constitutional rights of the public at large, including Mr. Binkley.

36.     The grossly unnecessary and excessive use of force by the KCSO deputies against a restrained man lying on the ground in pain and struggling to breathe clearly evidences their lack of training in how to lawfully complete their duties.   If these actions were prohibited, the KCSO Individual Defendants would have been disciplined.

37.     Further, the failure of the deputies to identify that Mr. Binkley was suffering from a drug overdose clearly evidences their lack of training on identifying individuals suffering from drug abuse and the appropriate methods to respond and obtain immediate treatment for such individuals.

38.     The use of the "hog-tie" method is well-known as a dangerous technique due to it causing positional asphyxiation and subsequent death, particularly in individuals who are overweight and placed on their stomach and/or who are under the influence.   Accordingly, the practice has been banned from use across the country by police / sheriff's departments.

39.     Based on information and belief (including a pattern of excessive force being used

by KCSO deputies), Knox County, Sheriff Spangler, and the KCSO failed to have in place proper protocols and training for sheriff's deputies regarding, among other things, identifying individuals suffering from drug abuse, properly monitoring and evaluating an arrestee medical condition, the appropriate use of force, the use of deadly force, the use of placing body weight on an overweight person in the prone position, the hog-tie method, and the unreasonable and unjustified risk of asphyxia and death to persons restrained with body weight in the prone position and/or using the hog-tie method.  As a result, excessive force and restraint was used against Mr. Binkley which proximately caused his death.

40.     Knox County, Tennessee, the Knox County Sheriff's Office, and Sheriff Tom Spangler are being sued for allowing a custom or practice of deliberate indifference to, among other things, the use of excessive force and the use of the hog-tie method, despite its unreasonable and unjustified risk of asphyxia and death to persons to persons restrained with body weight in the prone position and through the use of hog-tie method.  Numerous employees of Knox County and/or the Knox County Sheriff's Office, including the individual defendants, were present while excessive force was used on Mr. Binkley, including when Mr. Binkley was repeatedly pressed against the ground by the deputies even though he was already restrained and then when he was hog-tied, such that he had a substantially reduced ability to breathe, suffered personal injuries, and ultimately died.  They were also present when Mr. Binkley was not provided immediate medical treatment when he had obvious injuries after being pulled out of the truck, including but not limited to the laceration(s) on his face and a potential drug abuse, and when he was obviously unable to breathe while being hog-tied.  Upon information and belief, no employees of Knox County were disciplined for their role in the events and, therefore, their conduct was found to be in compliance

20

with the policies, practices and custom of Knox County and ratified in all respects.

41.     The Defendants' custom or practice of deliberate indifference to and their failure to properly train on, among other things, the use of excessive force and the use of the hog-tie method is also evidenced by the fact that such excessive force was repeatedly used by senior deputies on the scene, including but not limited to Defendant Harrell, in front of, among others, deputies who were in training, Defendant Burnett, Doss, Sosville and Bales.

42.     Among other things, the failure to provide medical attention to Mr. Binkley after his vehicle stopped because it became lodged on or near some trees, and it was evident that he sustained serious and obvious injuries, was arbitrary governmental activity which was shocking, reckless and deliberately indifferent to the serious medical needs of Mr. Binkley and constituted a violation of his substantive due process right to medical treatment in violation of the rights secured to Mr. Binkley by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. Section 1983 and 1988.

43.     Among other things, Johnathan Binkley being held to the ground, kicked while on the ground, and having the deputies place their body weight on him after he was already restrained and/or subdued was unjustified, unreasonable, excessive and grossly disproportionate to Mr. Binkley's actions, and constituted the use of excessive and unreasonable force in violation of the rights secured to Mr. Binkley by the Fourth Amendment to the United States Constitution and 42 U.S.C. Section 1983 and 1988.

44.     Among other things, hog-tying Johnathan Binkley was unjustified, unreasonable, excessive and grossly disproportionate to Mr. Binkley's actions, particularly when he was already subdued and not resisting, and constituted the use of excessive and unreasonable force in violation

21

of the rights secured to Mr. Binkley by the Fourth Amendment to the United States Constitution and 42 U.S.C. Section 1983 and 1988.

45. In particular, hog-tying Johnathan Binkley was unnecessary and unjustified under the circumstances then and there existing and posed a serious and obvious risk of serious bodily injury and/or death to him in violation of the rights secured to him by the Fourth Amendment to the United States Constitution and 42 U.S.C. Section 1983 and 1988.

46. Additionally and/or in the alternative, Defendants Knox County, Tennessee, KCSO, and Sheriff Spangler are liable for the violation of Mr. Binkley's civil rights due to the following policies, practices or customs of Defendants which were in effect at the time of this incident and which were the underlying cause of Mr. Binkley injuries, damages and death:

    a.    KCSO failed to adequately train and educate its deputies in the use of force, use of deadly force, use of body weight on persons in prone position, the risks of compression and positional asphyxia, the use/prohibition of the hog-tie method, the failure to combat the effects of asphyxia by rolling restrained suspect to their side, the failure to monitor the medical condition of suspects, the failure to intervene and prevent the use of excessive force, creating an atmosphere of illegal and unconstitutional behavior with respect to the use of force in deliberate indifference to and reckless disregard of the welfare of the public at large, including Mr. Binkley;

    b.    KCSO failed to train and educate its deputies with respect to use of force applications which it knew that its deputies were utilizing in the field and which posed a serious risk of personal injury including, but not limited to, use of force, use of deadly force, use of body weight on persons in prone position, the risks of compression and positional asphyxia, the use/prohibition of the hog-tie method, the failure to combat the effects of asphyxia by rolling restrained suspect to their side, the failure to monitor the medical condition of suspects, the failure to intervene and prevent the use of excessive force, in deliberate indifference to and reckless disregard of the welfare of the public at large, including Mr. Binkley;

    c.    KCSO failed to train and educate its deputies with respect to the use of dangerous restraining mechanisms with a high risk of causing asphyxiation, including the body weight and the hog-tie method, in deliberate indifference

to and reckless of the welfare of the public at large, including Mr. Binkley;

d.   KCSO repeatedly and knowingly failed to discipline its deputies with respect to violations of the laws of the State of Tennessee, the Constitution of the United States, and its own policies regarding the use of force, use of deadly force, use of body weight on persons in prone position, the risks of compression and positional asphyxia, the use/prohibition of the hog-tie method, the failure to combat the effects of asphyxia by rolling restrained suspect to their side, the failure to monitor the medical condition of suspects, the failure to intervene and prevent the use of excessive force, creating a pattern, policy, practice, custom or atmosphere where such illegal and unconstitutional behavior is tolerated, condoned and accepted by the KCSO in deliberate indifference to and reckless disregard of the public at large, including Mr. Binkley;

e.   KCSO failed to adequately monitor and evaluate the performance of its deputies and their use of force applications including the use of force, use of deadly force, use of body weight on persons in prone position, the risks of compression and positional asphyxia, the use/prohibition of the hog-tie method, the failure to combat the effects of asphyxia by rolling restrained suspect to their side, the failure to monitor the medical condition of suspects, the failure to intervene and prevent the use of excessive force, in deliberate indifference to and reckless disregard of the public at large, including Mr. Binkley;

f.   KCSO failed to adequately train and educate its deputies with respect to providing medical attention to persons sustaining injuries while in custody in deliberate indifference to and reckless disregard of the welfare of the public at large, including Mr. Binkley;

g.   KCSO failed to adequately train and educate its deputies with respect to providing medical attention to persons likely suffering from drug abuse, and potentially excited delirium, in deliberate indifference to and reckless disregard of the welfare of the public at large, including Mr. Binkley;

h.   KCSO has a policy, practice or custom of allowing its deputies to restrain persons by way of the hog-tie method without monitoring and evaluating the medical condition of the restrained person posing an unreasonable and unjustified risk of positional asphyxia and death in deliberate indifference to and reckless disregard of the welfare of the public at large, including Mr. Binkley; and

i.   KCSO allows its deputies to engage in conduct that violates the constitutional rights of persons in custody without fear of reprimand,

23

discipline or termination creating an atmosphere where such unconstitutional behavior is ratified, tolerated, and/or condoned, in reckless disregard to and deliberate indifference of the welfare of the public, including Mr. Binkley.

47.    Based on information and belief, despite the death of Mr. Binkley, Knox County, Tennessee and the Knox County Sheriff's Office failed to discipline any Knox County employee and therefore, ratified their conduct and unacceptable method of observation as in compliance with the policies, practices and customs of Knox County.   Plaintiff avers that these policies, practices and customs were the moving and underlying cause of the death of Mr. Binkley.

48.    Based on information and belief, prior instances of unconstitutional excessive force were sufficient to put the KCSO on notice that its: training on, among other things, the use of excessive force and the dangers of such force, were deficient and likely to cause injury; failing to adequately monitor and evaluate the performance of its deputies and their use of force applications were deficient and likely to cause injury; and failing to discipline its deputies with respect to violations of the laws of the State of Tennessee, the Constitution of the United States, and its own policies regarding the use of force and use of the hog-tie procedure were deficient and likely to cause injury.

49.    Alternatively, these Defendants are liable for the actions of their deputies by virtue of the fact that the KCSO Individual Defendants involved in this incident were not reprimanded, disciplined or terminated, and, accordingly, these Defendants ratified, condoned, or approved their conduct in this matter in all respects.

50.    Defendant Knox County, Tennessee is liable for the actions of its employees, agents and contractors by virtue of the fact that based on information and belief, it investigated this incident and found that all employees, agents and contractors acted in compliance with the policies,

practices and customs of the Defendants and, therefore, ratified, condoned and approved the conduct of the individual Defendants and other employees, agents and contractors in this matter in all respects.

51.    The above-referenced actions of these Defendants were done with deliberate indifference to the welfare of the public, including Mr. Binkley.

52.    Alternatively, Defendant Knox County, Tennessee and the Knox County Sheriff's Office are liable for the actions of their employees, agents and contractors under the doctrines of agency, vicarious liability, employer-employee relations, master-servant, *respondeat superior*, joint venture, contract and as a result of their non-delegable duty to comply with the constitution and laws of the United States and the State of Tennessee.

53.    Defendants have maintained and exhibited a pattern, practice, custom and policy of deliberate indifference to among other things the use of excessive force against arrestees, including on Mr. Binkley, which was the motivating force behind and proximately caused the deprivation of Mr. Binkley's constitutional rights under the Fourth and Fourteenth Amendments, and ultimately his personal injuries and wrongful death, and, accordingly, Plaintiff is entitled to recover from these Defendants, both jointly and severally.

54.    As a direct and proximate result of the Defendants' acts and/or omissions, Johnathan Binkley sustained personal injuries and wrongfully died, sustaining the damages and losses sought herein.

### State Law Claims
### Count III: State Constitutional Violations (Against All Defendants)

Plaintiff hereby incorporates, in their entirety, each and every paragraph of this Complaint and by reference make said Paragraphs a part hereof as if fully set forth herein.

25

55.     Plaintiff avers that, among other reasons, objectively unreasonable and excessive force was used against Mr. Binkley when under the above-referenced circumstances, these Defendants: (1) held Mr. Binkley to the ground by sitting, kneeling, and/or using their own body-weight to hold Mr. Binkley down; (2) repeatedly kicked Mr. Binkley while he was laying on the ground and restrained; (3) hog-tying Mr. Binkley, tying his hands and his feet together behind his back while he was laying on his stomach on the ground; and (4) after Mr. Binkley was moving his head around attempting to breathe while being hog-tied on his stomach, tightened the hog-tie, such that Mr. Binkley began suffering from positional asphyxia.

56.     The above described actions and omissions of the Defendants were committed under color of state law and under the color of their authority as police deputies and substantially deprived Mr. Binkley of the rights secured to him by Article I, Sections 7 and 8 of the Constitution of the State of Tennessee including, but not limited to, the following:

      a.     The right to freedom from unreasonable seizure of his person;

      b.     The right to freedom from the use of unreasonable, unjustified and excessive force;

      c.     The right to freedom from deprivation of liberty without due process of law;

      d.     The right to receive obvious medical attention as a result of the Defendants injurious acts and omissions;

      e.     The right to freedom from arbitrary governmental activity which "shocks the conscience" of a civilized society in violation of his substantive due process rights; and

      f.     The constitutional right to recovery for the unconstitutional killing of Johnathan Binkley.

26

57.     As a direct and proximate result of the Defendants' acts and/or omissions, Johnathan Binkley sustained personal injuries and wrongfully died, sustaining the damages and losses sought herein.

**Count IV**: **Negligence (Against KCSO Individual Defendants and John Doe Defendants)**

Plaintiff hereby incorporates, in their entirety, each and every paragraph of this Complaint and by reference make said Paragraphs a part hereof as if fully set forth herein.

58.     Defendant Knox County is a governmental entity as defined in Tenn. Code Ann. § 29-20-102.  Sheriff Spangler is the duly elected Sheriff of Knox County.  The individual Defendants are employees of Defendant Know County and/or KCSO.  None of the Defendants are healthcare facilities.

59.     The acts and omissions of the Defendants alleged herein were committed in the course and scope of their employment with the County of Knox and KCSO and in the performance of official functions.

60.     Alternatively, the acts, omissions and conduct of the individual Defendants herein in failing to identify that Mr. Binkley was suffering from asphyxiation and/or a drug abuse (and failing to obtain timely treatment) constitute negligence under the laws of the State of Tennessee. Plaintiff avers that all Defendants should be held jointly and severely liable for these torts, as the individual Defendants acted in the course and scope of their employment at all times material hereto and their actions were foreseeable.

61.     Further Defendant Knox County, Tennessee and KCSO are liable for the negligent acts of its agents and/or employees acting within the course and scope of their positions under the state law doctrines of *respondeat superior*, vicarious liability, employer/employee and agency.

27

62.     As a direct and proximate result of the Defendants' acts and/or omissions, Johnathan Binkley sustained personal injuries and wrongfully died, sustaining the damages and losses sought herein.

## Count V: Assault and Battery
### (Against KCSO Individual Defendants and Knox County, Tennessee)

Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this Complaint and by reference make said paragraphs a part hereof as if fully set forth herein.

63.     The acts and omissions of the Defendants alleged herein were committed in the course and scope of their employment with the County of Knox and KCSO and in the performance of official functions.

64.     The acts and omissions of the Defendants alleged herein were assault and battery.

65.     Defendants, through the actions described above, did intentionally attempt to do and did serious bodily harm to Mr. Binkley and caused him psychological trauma.  They also possessed a contemporaneous ability to cause such harm and trauma.

66.     Accordingly, Defendants committed an assault against Mr. Binkley and made contact with him in a harmful and offensive way, committing battery against him.

67.     The KCSO Individual Defendants' conduct was malicious, willful, and/or criminal for which they are not entitled to any immunity under State law.

68.     Defendant Knox County is responsible for the acts of their employees and agents pursuant to the doctrine of *respondeat superior*, has waived its immunity, and is liable to Plaintiff pursuant to Tennessee Code Annotated § 8-8-301 et seq.

69.     Defendant Knox County is further liable to Mr. Binkley pursuant to the Governmental Tort Liability Act, Tenn. Code Ann §29-20-201, *et. seq.*

70.     Mr. Binkley suffered physical and psychological injuries as a proximate result of Defendants' assault and battery.

## Count VI: Intentional Infliction of Emotional Distress
## (Against KCSO Individual Defendants)

Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this Complaint and by reference make said paragraphs a part hereof as if fully set forth herein.

71.     "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."    Restatement (Second) of Torts, §46(1). "Intentional infliction of emotional distress and outrageous conduct are not two separate torts, but are simply different names for the same cause of action." *Moorhead v. J.C.Penney Co. Inc.*, 555 S.W.2d. 713, 717 (Tenn. 1977).

72.     "[In Tennessee] there are three essential elements to [such a] cause of action: (1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in mental injury." *Id.* and *Johnson v. Woman's Hospital*, 527 S.W.2d. 133, 144 (Tenn. App. 1975). Plaintiff submit that Defendants' conduct as alleged herein is so egregious as to constitute intentional infliction of emotional distress.

73.     Plaintiff has suffered severe emotional trauma as a result of the individual Defendants' reckless, intentional and outrageous conduct which was the proximate cause of Mr. Binkley's suffering and death, and is entitled to recover from the individual Defendants.

74.     During the subject incident, Mr. Binkley suffered severe emotional trauma as a result of the individual Defendants' reckless, intentional and outrageous conduct which was the

29

proximate cause of Mr. Binkley's suffering and death, and is are entitled to recover from the individual Defendants.

75.     Further, "the tort of outrageous conduct is one in which punitive damages may be allowed." *Johnson* at 142.     Plaintiff is entitled to punitive damages for the individual Defendants' reckless, intentional, and outrageous conduct.

### Count VII: Punitive Damages

Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this Complaint and by reference make said paragraphs a part hereof as if fully set forth herein.

76.     The actions and omissions of the individual Defendants were unlawful, shocking to the conscience and unconstitutional, and performed maliciously, recklessly, intentionally, willfully, wantonly and/or in such a manner as to entitle Plaintiff to a substantial award of punitive damages.

### DAMAGES AND PRAYER FOR RELIEF

77.     As a direct and proximate result of the acts and omissions of Defendants, Mr. Binkley's constitutional rights were violated, and he sustained grave personal injuries and subsequently a wrongful death.   Further, Plaintiff and any other such heirs of Mr. Binkley have suffered damages as a result of his wrongful death.   The injuries and damages for which Plaintiff seeks compensation from Defendants, both jointly and severally, under both state and federal law include, but are not limited to, the following:

      a.      The wrongful death of Johnathan Binkley;
      b.      Physical pain and suffering;
      c.      Emotional pain and suffering;
      d.      Funeral expenses;
      e.      Loss of enjoyment of life;
      f.      Loss of wages and earning capacity;

30

g.    Loss of consortium and services of Mr. Binkley;

h.    Loss of the right to familial association with Mr. Binkley; and

i.    The full pecuniary value of the life of Mr. Binkley's as defined by Tennessee law.

78.    Plaintiff requests that this Honorable Court enter a judgment against Defendants, jointly and severally, granting or awarding the following relief:

a.    Compensatory damages for the injuries, damages, and wrongful death of Johnathan Binkley described herein in the amount the jury determines appropriate and just, not to exceed four million dollars;

b.    Punitive damages in an amount to be determined by the jury as fair and reasonable to deter the individual Defendants and others from engaging in similar misconduct;

c.    Attorneys' fees, to the fullest extent allowable by the statutes generally referenced herein and/or the common law applicable to this case, including but not limited to the extent permitted under 42 U.S.C. § 1988;

d.    Statutory and discretionary costs;

e.    Pre- and post- judgment interest; and

f.    All such further relief, both general and specific, to which she may be entitled.

79.    Plaintiff requests that a jury be impaneled to hear this cause

Respectfully submitted this 24th day of July, 2020.

  s/Wayne A. Ritchie II
Wayne A. Ritchie II, BPR No. 013936
James R. Stovall, BPR No. 32512
Samantha I. Ellis, BPR No. 036709
Ritchie, Dillard, Davies & Johnson, P.c.
606 W. Main Street, Suite 300
Knoxville, Tennessee   37902
Telephone: (865) 637-0661
Facsimile: (865) 524-4623
E-mail:  war@rddjlaw.com
        jstovall@rddjlaw.com
        swarchol@rddjlaw.com
*Attorneys for Plaintiff*

31