**U.S. Department of Justice**
Office of Justice Programs
*National Institute of Justice*





# National Law Enforcement Technology Center BULLETIN

June 1995                                                    A National Institute of Justice Program

# Positional Asphyxia—Sudden Death

*Major portions of this bulletin are drawn from a report prepared by the International Association of Chiefs of Police for the National Institute of Justice (NIJ), based on research conducted by Dr. Charles S. Petty, Professor of Forensic Pathology, University of Texas, and Dr. Edward T. McDonough, Deputy Chief Medical Examiner, State of Connecticut, and reviewed by the Less-Than-Lethal Liability Task Group.*

Police, sheriffs, and correctional officers have a limited and largely inadequate set of tools to use to safely subdue violent and aggressive subjects. Through NIJ's National Law Enforcement Technology Center (NLETC), the Federal Government is working to identify and support the development of a range of less-than-lethal technologies—from those suitable for one-on-one encounters to those that might be used for stopping fleeing vehicles. In a recent analysis of in-custody deaths, we discovered evidence that unexplained in-custody deaths are caused more often than is generally known by a little-known phenomenon called positional asphyxia.

This NLETC bulletin presents information relevant to positional asphyxia—i.e., death as a result of body position that interferes with one's ability to breathe—as it occurs within a confrontational situation involving law enforcement officers. We offer this information to help officers recognize factors contributing to this phenomenon and, therefore, enable them to respond in a way that will ensure the subject's safety and minimize risk of death.

The bulletin identifies factors found to precipitate positional asphyxia, and provides recommendations for ensuring a subject's safety and advisory guidelines for care of subjects. Information regarding the collection of potential evidence in cases involving positional asphyxia is also included. Through officer awareness and resultant action, it is anticipated that deaths attributable to this cause will be reduced.

Sudden in-custody death is not a new phenomenon—it can occur at any time, for a variety of reasons. Any law enforcement agency may experience a sudden in-custody death, and while rare, such deaths appear to be associated most often with the following variables:

- **Cocaine-induced bizarre or frenzied behavior.** When occurring while confined by restraints, cocaine-induced excited delirium (an acute mental disorder characterized by impaired thinking, disorientation, visual hallucinations, and illusions) may increase a subject's susceptibility to sudden death by effecting an increase of the heart rate to a critical level.

- **Drugs and/or alcohol intoxication.** Drug and acute alcohol intoxication is a major risk factor because respiratory drive is reduced, and *subjects may not realize they are suffocating*.

- **Violent struggle extreme enough to require the officers to employ some type of restraint technique.** Subjects who have engaged in extreme violent activities may be more vulnerable to subsequent respiratory muscle failure.

- **Unresponsiveness of subject during or immediately after a struggle.** Such unresponsive behavior may indicate cardiopulmonary arrest and the need for immediate medical attention.

It is important to understand how preexisting risk factors, combined with the subject's body position when subdued or in transit, can compound the risk of sudden death. Information contained in this bulletin may help to alert officers to those factors found frequently in deaths involving positional asphyxia.

## Basic Physiology of a Struggle

A person lying on his stomach has trouble breathing when pressure is applied to his back. The remedy seems relatively simple: get the pressure off his back. However, during a violent struggle between an officer or officers and a suspect, the solution is not as simple as it may sound. Often, the situation is compounded by a vicious cycle of suspect resistance and officer restraint:

- A suspect is restrained in a face-down position, and breathing may become labored.

- Weight is applied to the person's back—the more weight, the more severe the degree of compression.

- The individual experiences increased difficulty breathing.

- The natural reaction to oxygen deficiency occurs—the person struggles more violently.

- The officer applies more compression to subdue the individual.

## Predisposing Factors to Positional Asphyxia

Certain factors may render some individuals more susceptible to positional asphyxia following a violent struggle, particularly when prone in a face-down position:

- Obesity.

- Alcohol and high drug use.

- An enlarged heart (renders an individual more susceptible to a cardiac arrhythmia under conditions of low blood oxygen and stress).

The risk of positional asphyxia is compounded when an individual with predisposing factors becomes involved in a violent struggle with an officer or officers, particularly when physical restraint includes use of behind-the-back handcuffing combined with placing the subject in a stomach-down position.

## Advisory Guidelines for Care of Subdued Subjects

To help ensure subject safety and minimize the risk of sudden in-custody death, officers should learn to recognize factors contributing to positional asphyxia. Where possible, avoid the use of maximally prone restraint techniques (e.g., hogtying). To help minimize the potential for in-custody injury or death, officers should:

- Follow existing training and policy guidelines for situations involving physical restraint of subjects.

**Officer Subduing a Violent Suspect and How It Can Interfere With Breathing**



Subject's chest fully extended.

Breathing becomes labored due to pressure being exerted on subject's back.

Officer subdues violent suspect.

- As soon as the suspect is handcuffed, get him off his stomach.

- Ask the subject if he has used drugs recently or suffers from any cardiac or respiratory diseases or conditions such as asthma, bronchitis, or emphysema.

- Monitor subject carefully and obtain medical treatment if needed.

- Be trained to recognize breathing difficulties or loss of consciousness and immediately transport the individual to the emergency room, or call for an emergency medical team (EMT) unit if such signs are observed.

- Obtain medical care upon subject's request.

- If the subject is turned over to a detention facility, inform the facility's custodians of any preexisting medical conditions (cardiac, respiratory) or that the subject requested or needed medical treatment because of respiratory difficulty or because he became unconscious.

## Collection of Potential Evidence

Officers involved in confrontational situations should collect information that may later be of value in a civil or perhaps criminal action.

A use-of-force report should include details of how the individual was

restrained. The following information should be included:

- What was the nature of the postarrest restraint procedure? Identify whatever type of restraint (including chemical incapacitants) was used.

- How long was the subject face down and/or restrained?

- How was the subject transported, and in what position was the subject during transport?

- How long did the transport phase last, and what observations were made of the subject's condition?

To reasonably establish the cause of death or serious injury, a broad range of factors must be examined:

- Nature of the confrontation.

- Weapon(s), if any, employed by officers.[*]

- Duration of the physical combat.

- System or type of postarrest restraint employed.

- Transportation of the subject: destination, duration, mode of transport, and position of subject during transport.

- Emergency room observations and actions, names of attending medical personnel.

- Postmortem examination (autopsy) of subject: nature of injuries, diseases present, drugs present, and other physical factors.

_____
[*]If any incapacitant was used (e.g., pepper spray), the delivery system should immediately be secured for possible analysis.

## Conclusion

To help minimize the risk of positional asphyxia, diligent observation and monitoring of subjects displaying any one or a combination of the described indicators are procedurally warranted. Furthermore, the use of maximal, prone restraint techniques should be avoided. If prone positioning is required, subjects should be closely and continuously monitored. By implementing such procedural protocols, the potential for in-custody deaths may be lessened.

### NLETC Bulletin

The *NLETC Bulletin* is designed as a forum for disseminating to the law enforcement and criminal justice communities the most current information on technologies relevant to your needs. We welcome your comments or recommendations for future *Bulletins*.

_____

The National Law Enforcement Technology Center is designing data bases to help respond to agencies that want to know who manufactures a specific product and what other agencies may be using that product. Your contributions to the Center's information network are important. What technologies or techniques are you using that you would like to share with colleagues? Please call or write to the National Law Enforcement Technology Center, P.O. Box 1160, Rockville, MD 20849, 800–248–2742.

NYPD's Guidelines to Preventing Deaths in Custody

- As soon as the subject is handcuffed, *get him off his stomach*. Turn him on his side or place him in a seated position.

- If he continues to struggle, *do not sit on his back*. Hold his legs down or wrap his legs with a strap.

- Never tie the handcuffs to a leg or ankle restraint.

- If required, get the suspect immediate medical attention.

- Do not lay the person on his stomach during transport to a station house or hospital. Instead, place him in a seated position.

- An officer should sit in the rear seat beside the suspect for observation and control.

The New York City Police Department (NYPD) has developed a training tape on positional asphyxia. The Department has agreed to make the tape available to interested law enforcement agencies. To request a complimentary copy, please send your written request on departmental letterhead, and a blank VHS tape, to the Deputy Commissioner of Training, NYPD, 235 East 20th Street, New York, New York 10003.

The National Law Enforcement Technology Center is supported by Cooperative Agreement #95–IJ–CX–K002 awarded by the U.S. Department of Justice, National Institute of Justice.

The National Institute of Justice is a component of the Office of Justice Programs, which also includes the Bureau of Justice Assistance, Bureau of Justice Statistics, Office of Juvenile Justice and Delinquency Prevention, and Office for Victims of Crime.

**U.S. Department of Justice**

Office of Justice Programs

*National Institute of Justice*

*Washington, DC 20531*

Official Business
Penalty for Private Use $300

BULK RATE
POSTAGE & FEES PAID
DOJ/NIJ
Permit No. G–91

# TRAINING BULLETIN

*"Education promotes professional and responsive law enforcement"*

## Sudden Custody Death Syndrome

## Purpose

The purpose of this bulletin is to educate officers in the phenomenon known as Sudden Custody Death Syndrome, which encompasses Positional Asphyxia and Substance Induced Excited Delirium. This bulletin also describes the causes, symptoms, and steps to be taken to reduce the risks associated with these syndromes.

## Introduction

Sudden Custody Death Syndrome is a major issue facing law enforcement today. The term "*Sudden Custody Death Syndrome*" is a misnomer as it infers the syndrome only relates to deaths occurring in police custody. Studies by medical examiners, beginning in the early 80's, attempted to understand why uninjured people were dying in police custody for no apparent reasons. Researchers discovered these deaths were also occurring in ambulances, hospitals, and emergency rooms despite the immediate access and availability of advanced life support equipment and techniques. The common denominator in a majority of these deaths was the level of cocaine ingested by the subjects. As a result of these findings, the term " *Cocaine Psychosis*" was the original name of the syndrome.

Later research discovered behavioral similarities between those individuals who exhibited symptoms of Cocaine Psychosis and subjects who were under the influence of other drugs such as alcohol, LSD, Methamphetamine, PCP, prescription barbiturates, and THC. Sometimes, even the lack of having taken certain physician prescribed drugs may cause a similar response manifesting itself in abnormal behavior. Since the list of suspected drugs and conditions has expanded, the more general term "*Substance Induced Excited Delirium*" is now used to describe this condition.

## I. Positional Asphyxia

Positional Asphyxia (*Hypoxia*) occurs when the position of the body interferes with respiration and results in asphyxia. Substance-Induced Positional Asphyxia deaths are not a new phenomenon, and have occurred since man discovered the intoxicating effects of alcohol. With regular frequency, intoxicated individuals die of Positional Asphyxia when falling asleep (*passing out)* while in a seated position. If their chin rests on their chest (*head-down*), their airway can become restricted resulting in suffocation. Drug and acute alcohol intoxication are

major risk factors because the brain's neural centers controlling respiration may become impaired, and the subject may not realize they are suffocating.

Police in-custody Positional Asphyxia deaths are currently a topic of many debates in both medical literature and the courts. One of the primary studies on Positional Asphyxia which previously concluded that body positioning contributed to suspect deaths was recently discredited by a University of California, San Diego, study. It is currently unknown if a suspect body position and restraint method may have any negative physical effects on a restrained subject, however, other restraint methods have been developed by the Santa Ana Police Department. Deaths previously attributed to "*Positional Asphyxia*" have oftentimes involved subjects who had ingested various types and amounts of alcohol and/or narcotics.

## II. Substance Induced Excited Delirium - Toxic Delirium

Persons who abuse narcotics or suffer from different psychoses may experience Substance Induced Excited Delirium or Toxic Delirium. Substance Induced Excited Delirium is a term used to describe a particular type of medical and behavioral condition characterized by violent and erratic behavior. Dr. Charles Wetli, Deputy Chief Medical Examiner for the Metro-Dade Examiners Office, states that a typical episode of Excited Delirium begins with the "*rapid onset of paranoia, followed by aggression toward objects, particularly glass. This is frequently followed by a variety of bizarre activities, usually disrobing, running through backyards, yelling and hiding in bushes or behind cars. Police are often confronted with violent individuals who exhibit extreme strength, and are suffering from hypothermia, resulting in profuse sweating. Without warning the individual suddenly collapses and dies, generally within an hour after being restrained.*"

Numerous drugs have been identified which can contribute to the onset of Excited Delirium. These drugs include Cocaine, Methamphetamine, PCP, and LSD. When an individual takes one or more of these drugs, and subsequently becomes agitated, their body produces large amounts of Adrenaline, Dopamine and Norepinephrine that constricts the blood vessels in the heart and brain. The combination of these artificial and natural chemicals has a toxic effect that may result in the collapse and death of the subject.

## III. Procedure

Officers responding to a call involving a high risk individual should attempt to contact the calling party to obtain additional information regarding the person's past history, level of violence, and access to weapons. Officers should attempt to contain and calm the subject prior to any physical contact provided **IT CAN BE DONE SAFELY.**

When contacting an "*at risk*" individual, use a calm soothing voice and avoid any sudden or aggressive movements. Reassure the person you are there to help, and attempt to talk them into custody

Prolonged struggles increase the risk subjects may develop excessive vasoconstriction of the blood vessels. For the safety of the individual, the officers involved, and the community, officers should use a strategy that will subdue the subject as quickly as possible.

Officers shall adhere to all procedures contained within Departmental Order #420 (*Use of Leg Restraints*). If officers need to apply pressure to the back and shoulders of an individual to apply restraints or handcuffs, the pressure applied to the back and shoulders should be as brief and minimal as possible. The amount of pressure used should be in direct relation to the resistance exerted by the individual, and for only that amount of time as is necessary to apply the restraints. Officers must remember that the danger of the restraint is its affect on breathing. The best positions for breathing are sitting up, followed by lying on one's side. Following restraint the individual shall immediately be placed on their side or in the sitting position. They shall not be placed face down and left lying on their chest or stomach, and shall be constantly monitored as to their physical condition. Most people who have died while restrained have been unobserved. Officers shall monitor restrained individuals for the following:

1. Breathing.
2. Color (**watch for subject turning blue or gray**).
3. Functional level of consciousness-The physical state of a person being conscious and able to speak, answer questions, and move around spontaneously.

Individuals suffering from Substance Induced Excited Delirium are at a very high risk for cardiovascular or respiratory collapse which may lead to sudden death. Some high-risk individuals may die no matter how carefully they are restrained. Officers shall not transport anyone exhibiting the symptoms of Excited Delirium to any police facility before that person has been examined by paramedics and/or treated at an emergency facility. Officers shall transport individuals in accordance to Departmental Order #420.

The paramedics shall respond to the scene and transport any subject who is in the maximally restrained position when that subject is:

1. Not at a recognizable level of consciousness.
2. Having difficulty breathing.
3. Convulsing.
4. Having a seizure.
5. Complaining of pain.

## Summary

In-custody deaths are a major issue facing law enforcement today. It is vital officers remain aware of the issues surrounding Sudden Custody Death Syndrome and be properly trained in techniques to effectively apply restraints to subjects at risk. The proper monitoring of maximally restrained subjects, and those suspected of suffering from Substance Induced Excited Delirium, is essential to the safety of the restrained subject. Officers must understand that occasionally, despite taking all reasonable precautions during the restraint of individuals and the availability of extensive medical resources, some subjects may die in police custody as a result of the amount of alcohol and/or narcotics ingested.

## Reference Sources:

The San Diego Police Department's "Final Report Of The Custody Death Task Force" (1992), San Diego Police Department's Videos and Bulletins on "In Custody Deaths," "Interview with Dr. Blackbourne," "Interview with Dr. Tennant," and "Cord-Cuff Maximum Restraint". Other reference material includes, Ripp Restraints, Inc. Instructor's Certification Workbook and video "Sudden Custody Death Syndrome." The Los Angeles Police Department's and the California Highway Patrol's Training Bulletins on "Hobble Restraints" and "Transportation of Violent Prisoners" The Spokane Police Department's video "Leg Restraint Technique," The National Law Enforcement Technology Centers article, "Positional Asphyxia-Sudden Death", (June 1995), and "Topics in Sudden Death Syndrome" by Vincent P. O'Neil, National Trainer, National Law Enforcement Training Center (Copyright 1995). Price v. County of San Diego, 1998 WL 16007 (S.D.Cal.)

**Acknowledgment**: This training bulletin was researched and prepared by Sgt. A.J. Levatino and Corporal J. Gabelman. Replaces Training Bulletin 95-10

**Reviewed By**: Cpl. K. De Deaux

**Revision Date**: March 2006

**Reviewed By**: Training Division

**Revision Date**: August 2010



## PROCEDURES & POLICIES

# How To Prevent Positional Asphyxia

September 9, 2019 • by Lawrence E. Heiskell



**When you take someone into custody, be careful about how you position them. Certain restrained positions can restrict breathing and lead to the tragedy of in-custody death.**

*Photo: Getty Images*

As law enforcement officers, part of your job is to subdue and restrain violent people in order to protect yourself, others, and even the subject being restrained. Unfortunately, the techniques you use to control and restrain the subject may interfere with that individual's ability to breathe. This can result in an in-custody death from a phenomenon called positional asphyxia.

Despite the name, positional asphyxia is not just about the position of the subject's body. There are precipitating factors that make positional asphyxia deadly. These factors include intoxication due to alcohol, drug use, obesity, psychiatric illnesses, and physical injury. Positional asphyxia may even be caused simply by the subject getting into a breathing-restricted position they cannot get out of, either through their own carelessness or as a consequence of an accident or illness. Some people have suffered seizures that trapped them in positions where their breathing was restricted and death resulted.

Positional asphyxia is a potential danger of some common physical restraint techniques. That's why it is necessary for law enforcement officers to know and understand that preexisting risk factors combined with the body position of the subject when subdued or while in transport can increase the risk of in-custody death.

**Risk Factors**

There are certain risk factors that may render some subjects more susceptible to positional asphyxia following a struggle with law enforcement officers. This is especially true if the subject is restrained and placed in a face-down or prone position.

Common risk factors of death from positional asphyxia include but are not limited to excessive alcohol intoxication, drug use, obesity, and medical conditions such as an enlarged heart. An individual with an enlarged heart can have a greater susceptibility to a cardiac arrhythmia (irregular heartbeat) when under conditions of stress and when there are low levels of oxygen in the blood stream.

The following is a closer look at some factors and circumstances that can make an individual more susceptible to death from positional asphyxia.

**Violent Struggle—**People who have engaged in a difficult and aggressive struggle may be more susceptible to respiratory muscle fatigue and failure.

**Excited Delirium—**Subjects who are under the influence of cocaine or methamphetamine while in restraints may experience a condition known as excited delirium. This disorder results in disorientation, hallucinations, and impaired thinking. Excited delirium may raise the individual's susceptibility to a sudden increase in heart rate, which can rise to a critical level and result in cardiac arrest.

**Alcohol Intoxication and Drugs—**Alcohol is a significant risk factor in positional asphyxia because it lowers the respiratory drive. Individuals who have been drinking heavily are among the most likely to die in custody from medical events.

**Body Position—**Death due to a head-down position with hyper flexion of the neck is a rare event. It is however a critical condition arising out of particular body positions that can lead to mechanical obstruction of respiration. Studies have suggested that restraining a person in a face-down position is likely to cause greater restriction of breathing than restraining a person face-up.

Multiple cases of death by positional asphyxia have been associated with the hog tied or prone restraint position. The risk of positional asphyxia is further compounded when a suspect with predisposing medical conditions becomes involved in a violent struggle with an officer. This is especially true when the physical restraint includes the use of behind-the-back handcuffing combined with placing the individual in a stomach down position. Many law enforcement and health personnel are now taught to avoid restraining people face-down or to do so only for a very short period of time.

Other aspects of how the subject is restrained can also increase the risk of positional asphyxia death. Placing a knee or weight on the subject and particularly any type of restraint hold around the subject's neck can be problematic. Research measuring the effect of restraint positions on lung function suggests that restraint that involves bending the restrained person or placing body weight on them has a greater effect on breathing than face-down positioning alone.

When restraining a person in a seated position, the risk will be higher in cases where the restrained person has a high body mass index (BMI). A large waist girth may also reduce the ability to breathe, if the person is pushed forward.

**Mitigating the Risk**

In order to ensure the safety and to minimize the risk of positional asphyxia resulting in an in-custody death, law enforcement officers should learn to recognize contributing factors and conditions that contribute to positional asphyxia.

1. When feasible, officers should avoid the use of prone restraint techniques.

2. Learn and follow department guidelines and policy for situations involving physical restraint of individuals.

3. Once the suspect is handcuffed, get them off the face-down position.

4. Inquire about the recent use of drugs or if the subject has a cardiac condition or any respiratory conditions or diseases.

5. Have someone monitor the subject.

6. Obtain medical evaluation and treatment if needed.

7. Pass on any information about drug or alcohol use and medical conditions to the personnel at the detention facility where the subject will be incarcerated.

In-custody death is one of the great tragedies in law enforcement and one of the most common causes is positional asphyxia. To reduce the risk of positional asphyxia, the use of maximal face-down position restraint techniques should be avoided. If it is necessary to position a person face-down under restraint, then the subject must be closely and continuously monitored. By doing so and following procedures discussed in this article, the potential for in-custody deaths from positional asphyxia can be lessened.

*Lawrence Heiskell, MD, FACEP, FAAFP is an emergency physician and a veteran reserve police officer with the Palm Springs (CA) Police Department. He is the founder and medical director of the International School of Tactical Medicine.*

**AELE Monthly Law Journal**

*Cite as*: **2009 (1) AELE Mo. L. J. 101**

ISSN 1935-0007

Civil Liability Law Section – January 2009

**Restraint Ties and Asphyxia**

**Part Two - Compressional Asphyxia**

*Contents - Part One (last month)*

1. Introduction
2. Definitions
3. The hobble restraint
4. Use of force training
5. Endnotes
6. Specimen police policies

*Contents - Part Two*

1. Compressional asphyxia
2. Conclusions
3. References
4. List of judicial decisions

- This is the second and final part of the article. Part one can be viewed here.

## 1. Compressional asphyxia

Liability can attach because officers (or others) continuously applied weight to a person's back, while they suffocated in a face-down body position. A leading case in the Ninth Circuit is Drummond v. City of Anaheim, #02-55320, 343 F.3d 1052, cert. den. 2004 U.S. Lexis 4396 (9th Cir. 2003).

Officers determined that a man who was mentally ill should be taken to a medical facility for his own safety, but the manner in which they allegedly attempted to subdue and restrain him resulted in his falling into a coma from which he never recovered.

They allegedly knocked him to the ground, and cuffed his arms behind his back as he laid on his stomach. Although he offered no resistance, it was claimed that one officer put his knees into the his back and placed the weight of his body on him. Another officer also put the weight of his body on him, except that he had one knee on his neck.

With two officers leaning on his neck and upper torso, he fell into respiratory distress. Two eyewitnesses later stated that the he repeatedly told the officers that he could not breathe and that they were choking him, but the officers continued to put their weight upon his back and neck. The officers were alleged to be laughing during these events, although they were obviously causing the man to have trouble breathing.

After approximately twenty minutes, the officers obtained a hobble restraint, which they used to bind his ankles. A minute after the restraint was applied, he went limp, and the officers realized that he had lost consciousness.

They then removed the handcuffs and hobble restraint and turned him over onto his back, attempting to perform CPR. While he was revived approximately seven minutes after losing consciousness, he sustained brain damage and fell into a coma, and is now in a "permanent vegetative state."

The plaintiff's medical expert stated that the detainee "suffered a cardiopulmonary arrest caused by lack of oxygen to his heart," due to his inability to breathe "caused by mechanical compression of his chest wall such that he could not inhale and exhale in a normal manner."

Overturning a summary judgment for the defendants, a three-judge panel found that the alleged actions of the police, if true, constituted excessive force under the circumstances. The detainee was unarmed, and was seized for purposes of transporting him to a medical facility, and there was no crime he was accused of. The detainee was likely to pose only a "minimal threat" to anyone after he was handcuffed, and he did not resist the officers after he was on the ground.

The degree of force used was "severe," the court found, since it posed a risk of "compression asphyxia" which could cause serious injury or death.

The appellate panel also rejected the argument that the officers were entitled to qualified immunity for continuing to press their weight onto the man's neck and torso as he lay handcuffed on the ground and begged for air. A reasonable officer, the court found, should have known that such force was excessive.

In 2008, another Ninth Circuit panel cited *Drummond* as a basis for denying qualified immunity in a compressional asphyxia lawsuit.

> "We have had similar cases in the past that would have put reasonable police officers on notice that … keeping an individual who is in a state of excited delirium restrained with his chest to the ground while applying pressure to his back and ignoring pleas that he cannot breathe – constituted excessive force under the Fourth Amendment."

Arce v. Blackwell, #06-17302, 2008 U.S. App. Lexis 20162 (Unpub. 9th Cir.).

Not surprisingly, the use of pepper spray was often used in cases of asphyxiation. An Ohio lawsuit was brought by the relatives of a man who weighed almost 350 pounds, and had PCP and cocaine in his bloodstream when he struggled with police and resisted their attempts to arrest him. The plaintiffs claimed that officers used excessive force, unnecessarily striking him with metal batons and causing him to suffer respiratory failure from asphyxia when they sat on him, after spraying pepper spray into his face.

The trial court found that the plaintiffs sufficiently stated a claim that the officers who apprehended him used excessive force against him, as the confrontation began simply because firefighters who encountered him perceived him as creating a "nuisance," which is "not the type of crime" permitting officers to use a greater use of force.

It was disputed whether the decedent subsequently was resisting arrest, or was simply trying to position himself so that he could breathe. Additionally, the plaintiffs in the case alleged that the officers used pepper spray against the decedent after he was already face down and was being handcuffed, which the court stated, if true, could also constitute an excessive use of force.

The officers were not entitled to qualified immunity because a reasonable officer might have known that engaging in the alleged acts violated the decedent's right to be free from excessive force. The court granted a motion to dismiss claims by the plaintiffs against the firefighters, who left the scene before some of the incidents that resulted in the decedent's death. It denied a motion to dismiss claims against the police officers involved in the incident. A three-judge appellate panel affirmed, writing:

> "The complaint alleges that each of the officers present - the six who subdued Jones and the three sergeants who arrived afterwards - knew that the handcuffed Jones was not breathing. Therefore each knew of a substantial risk of serious harm to Jones's safety while he was in their custody and disregarded that risk by failing to provide aid.

> "The right of a suspect in custody to receive adequate medical care, even if the suspect had been fleeing and resisting before the officers placed him in custody, was clearly established almost three years before Jones's death. Therefore, the officers who subdued Jones and the sergeants who arrived soon after are not entitled to qualified immunity on the failure to provide medical care claim."

Jones v. City of Cincinnati, # 1:04-CV-616, 2006 U.S. Dist. Lexis 75430, 2006 WL 2987820 (S.D. Ohio); affirmed, #06-4528, 521 F.3d 555 (6th Cir. 2008).

In Chicago, fourteen courtroom deputies attacked an obese witness, "forced him to the floor, sat on and handcuffed him." He did not resist the deputies' attempt to restrain him. While handcuffed and on the floor, "he emptied his bladder and bowels, and he appeared to have stopped breathing. Paramedics rendered emergency assistance at the scene and then transported him to a hospital, where he was pronounced dead."

The Seventh Circuit affirmed the district court's order denying the deputies' motion to dismiss the §1983 claims brought by the deceased's mother. Richman v. Sheahan, #07-1487, 512 F.3d 876 (7th Cir. 2008).

The Sixth Circuit upheld a $900,000 jury award to family of an autistic man who died after officers seeking to restrain him allegedly continued to use pepper spray and to lay on top of his body after he was handcuffed, hobbled face-down, and was no longer resisting. Five different witnesses testified that the officers continued to sit or otherwise put pressure on his back while he was prone on the ground with his face towards the floor. They stated that they did not see him struggle during this time.

Continued use of such force at that point, the panel ruled, violated clearly established law, and jury's award was not excessive. "We have also consistently held that various types of force applied after the subduing of a suspect are unreasonable and a violation of a clearly established right." Champion v. Outlook Nashville, Inc., # 03-5068, 380 F.3d 893, 2004 FED App. 0270P (6th Cir. 2004).

A California appellate panel ruled that Los Angeles County was properly held liable for death of arrestee who was subjected to the Sheriff's "total appendage restraint procedure." Expert testimony established that he died of mechanical asphyxia. While in a prone position, an officer was kneeling on his chest.

The panel also found that the plaintiff's expert could properly ascribe the cause of death even if he was not present at the autopsy. He had viewed a videotape, the coroner's autopsy reports and photographs, the report of another pathologist who performed a post mortem examination, the deceased's records from the Dept .of Corrections, and depositions given by several of the deputies. Nelson v. County of Los Angeles, #B161431, 113 Cal. App. 4th 783, 6 Cal. Rptr. 3d 650 (Cal. App. 2003).

The city of West Palm Beach got a one-time pass when a federal court found qualified immunity for a restraint asphyxia death of a man named Lewis. The court wrote:

> "... while Officer L_ and Officer R_ kept their knees on Lewis' back, Officer S_ picked up Lewis' bound legs and pushed them down and forward. Lewis suddenly became silent and motionless. The officers then tied Lewis' hands and feet together behind his back in a 'hogtied' position.
>
> "Officer M_ realized that Lewis had become unconscious and ordered the other officers to move Lewis onto his side. ... The officers gave first aid to Lewis, including CPR, while waiting for medical assistance to arrive. ... Paramedics arrived within several minutes and assumed control of Lewis' treatment, but they were unable to resuscitate Lewis. Lewis was later pronounced dead."

The judge found that a reasonable juror could conclude that the officers used constitutionally excessive force in their confrontation with Lewis. However, because plaintiff has not demonstrated that the allegedly-violated right was clearly established in 2005, the officers were entitled to qualified immunity and summary judgment on

plaintiff's §1983 claim. <u>Lewis v. West Palm Beach</u>, #06-81139-Civ, 2008 U.S. Dist. Lexis 21587 (S.D. Fla. 2008).

## 2. Conclusions:

Police trainers must be aware of potential deaths from compressional asphyxia. Officers must be taught to avoid putting their body weight on a confined person as soon as active resistance has ended **or** the person has been adequately restrained from causing harm to himself or others. Dr. Reay's article in the May, 1996 *FBI Law Enforcement Bulletin* emphasized:

> "Instructors must stress vigilance in monitoring the subject's condition. The process of hypoxia is insidious, and subjects might not exhibit any clear symptoms before they simply stop breathing. Generally, it takes several minutes for significant hypoxia to occur, but it can happen more quickly if the subject has been violently active and is already out of breath. If the subject experiences extreme difficulty breathing or stops breathing altogether, officers must take steps to resuscitate the subject and obtain medical care immediately."

Deaths will still occur because of substance abuse, or pre-existing coronary or respiratory conditions. But if a dashboard video camera shows officers putting their weight on a person shortly before he stops breathing, a civil suit and a disciplinary investigation are likely to follow. The outcome of both might be adversely influenced by media bias, political posturing, or racial overtones.

- Caution – from a policy and training perspective, officers are admonished to cease aggressively restraining persons who *appear* to have abandoned their resistance. As a practical matter, due to the influence of abused substances or other reasons, people sometimes resist, submit, and then renew their resistance with increased vigor. "It ain't over 'til it's over" is more than a cute phrase.

## 3. References:

### A. Articles and books *(chronological)*

2008: Conditions and Circumstances Predisposing to Death from Positional Asphyxia in Adults. Byard, Wick & Gilbert, 15 (7) Jour. of Forensic and Legal Medicine (U.K.) 415-

419. (*Examination of autopsy files revealed instances where positional asphyxia compromised respiration due to intoxication, multiple sclerosis, epilepsy, Parkinson disease, Steele–Richardson–Olszewski syndrome, Lafora disease and quadriplegia.*)

2008: Sudden Death During Restraint: Do Some Positions Affect Lung Function? J. Parkes, 48 (2) Medicine, Science and the Law 137-41, PMID: 18533573.

2008: Excited Delirium, Restraint and Sudden Death, Prof. Ted Chan, M.D., UCSDMC, 3rd Annual Sudden Death, Excited Delirium & In-Custody Death Conference, Instit. for the Prevention of In-Custody Deaths, course-book at pp. 96-118.

2007: Death in Custody: A Historical Analysis. Grant, Southall, Fowler, Mealey, Thomas & Kinlock, 52 (5) Jour. of Forensic Sciences (Blackwell) 1177-1181 (Sep. 2007); NCJ #220433.

2006: Sudden Death, Excited Delirium, and Issues of Force: Part I. John Peters. Ph.D., 22 (2) Police and Security News 1-4. (Mar.-Apr.).

2006: Forensic Science and Medicine: Sudden Deaths in Custody.  Darrell Ross, Ph.D. & Ted Chan, M.D. (eds.), Humana Press; ISBN 1-58829-475-7. See ch. 4, pp. 39 et seq., *Positional and Restraint Asphyxia,* by Dr. Tom Neuman, UCSDMC (defense expert in Price v. County of San Diego).

2006:  Medicolegal Investigation of Death: Guidelines for the Application of Pathology to Crime Investigation (4th ed.) Chas. C. Thomas, Publ. See Ch. 14, *Asphyxia*, by Werner Spitz.

2004: Weight Force During Prone Restraint and Respiratory Function.  Chan, Neuman, Clausen, Eisele & Vilke, 25 (3) Amer. Jour. of Forensic Medicine & Pathology (*NAME*) 185-189.

2004: Deaths in Police Confrontations When Oleoresin Capsicum is Used. Charles S. Petty M.D, NCJRS #204029.

2003: Police Use of Force and Suspect Resistance: The Micro Process of the Police-Suspect Encounter. W. Terrill, 6 (1) Police Quarterly (Sage) 51-83.

2003: Effectiveness and Safety of Pepper Spray, NIJ Research for Practice. M. Bowling, M. Gaines & C. Petty, NCJ 195739. (*A study of 63 in-custody deaths at the University of Texas Southwestern Medical Center attributed seven deaths to positional asphyxia*).

2002: A Review of the Literature on Positional Asphyxia as a Possible Cause of Sudden Death During Restraint. J. Parkes, 4 (1) British Jour. of Forensic Practice 24-30.

2001: Factors Associated With Sudden Death of Individuals Requiring Restraint for Excited Delirium. Stratton, Rogers, Brickett & Gruzinski, 19 (3) Amer. Jour. of Emerg. Med. 187–91; PMID 11326341.

2001: Pepper Spray's Effects on a Suspect's Ability to Breathe. Chan, Vilke, Clausen, Clark, Schmidt, Snowden & Neuman, NIJ Research in Brief, NCJ 188069.

2000: Impact of Oleoresin Capsicum Spray on Respiratory Function in Human Subjects in the Sitting and Prone Maximal Restraint Positions, Final Report. Chan, Clark, Clausen, Neuman, Schmidt, Snowden, & Vilke; NCJ 182433.

2000: Asphyxial Death During Prone Restraint Revisited: A Report of 21 Cases. R. O'Halloran and Frank, 21 (1) Amer. Jour. of Forensic Medicine & Pathology (*NAME*) 39-52; PMID 10739225.

2000: Sudden Death During Restraint: A Study to Measure the Effect of Restraint Positions on the Rate of Recovery from Exercise. J. Parkes, 40 (1) Med. Sci. Law 39-44; PMID: 10689860. (*No evidence of hypoxia or difference in oxygenation*).

2000: Do "Maximal Restraints" Violate Clearly Established Law? Edwin H. Byrd, III, 67 (11) The Police Chief (Nov.); IACP Net Doc. #552446.

2000: Death Investigation: A Handbook for Police Officers. Terry Castleman, Chas. Thomas, Publ., ISBN 0-398-07105-5.

1999: The Effects of Positional Restraint on Heart Rate and Oxygen Saturation. P. Schmidt & T. Snowden, 17 (5) Jour. of Emergency Medicine 777-782; PMID: 10499689.

1999: Cardiorespiratory Consequences of the Hobble Restraint. Roeggla, Roeggla & Moser, 6 (10) Acad. Emerg. Med. 1076-7; PMID 10530674.

1999: Assessing the Patterns of Citizen Resistance During Arrests. D. L Ross, 68 (6) FBI Law Enf. Bull. 5-11.

1999: Restraint Position and Positional Asphyxia. D. Reay & J. Howard, 20 (3) Amer. J. Forensic Med. Pathol. 300-1; PMID: 10507802.

1999: Death in a Hobble Restraint. Georg Roeggla M.D. (letter) 161 (1) Canadian Medical Assn. Jour. 21.

1999: Handbook for Death Scene Investigators. Jay Dix, CRC Press, ISBN 9780849302985; 152 pp.

1998: Reexamination of Custody Restraint Position and Positional Asphyxia. Chan, Vilke & Neuman. 19 (3) Amer. J. Forensic Med. Pathol. 201-205; PMID: 9760082.

1998: Deaths in Police Custody: Learning the Lessons, U.K. Home Office Police Research Group, Police Research Series Paper 26. Leigh, Johnson & Ingram; ISBN 1-84082-122-1. (*Six cases where the restraint may have led to a condition termed postural or positional asphyxia. Past research, particularly in the U.S., had suggested that such deaths could occur where an individual was held down or placed in a prone position and restricted in their movement – either because their hands were handcuffed behind them or because someone was on top of them, holding them down*).

1998: Death in Custody. D. Reay, 18 (1) Clinics in Laboratory Medicine (*Elsevier*) 1-22.

1997: Restraint Position and Positional Asphyxia. Chan, Vilke, Neuman & Clausen, 30 (5) Annals of Emerg. Med. 578-586; PMID 9360565.

1997: Evaluation of Pepper Spray, NIJ Research in Brief. Onnen, Granfield & Edwards, NCJ 162358.

1997: Cardiorespiratory Consequences to Hobble Restraint. M. Roeggla, et al., 109 (10) Wiener Klinische Wochenschrift 359-361; PMID: 9200808.

1996: Suspect Restraint and Sudden Death. Donald T. Reay, M.D., 65 (5) FBI Law Enf. Bull.

1996: An Analysis of In-Custody Deaths and Positional Asphyxiation. Darrell L. Ross, Ph.D., 21 (2) The Police Marksman (Mar/Apr).

1996: Hog Tying: Is it the Use of Deadly Force? Thomas A. Rosazza, American Jails, (Jan.).

1995: Positional Asphyxia – Sudden Death, Bulletin of the National Law Enforcement Technology Center, National Institute of Justice, June.

1995: Sudden Death in Individuals in Hobble Restraints During Paramedic Transport. Stratton, Rogers & Green, 25 (5) Annals of Emerg. Med. 710-712; PMID: 7741355.

1995: Australian Deaths in Custody and Custody-related Police Operations, 1994-95. V. Dalton and D. McDonald, Australian Institute of Criminology, Canberra.

1994: Cocaine Fatalities Increased by Restraint Stress. C. Pudiak & M. Bozarth, 55 (19) Life Sciences & Pharmacology Letters (*Elsevier*) 379-382. *Laboratory rats injected daily with a moderate dose of cocaine hydrochloride showed increased fatalities when cocaine injections were followed by 30 min of restraint stress. The 5-day mortality rate was 58% for the cocaine-plus-stress group, while 17% of the animals receiving cocaine without restraint stress died.*

1994: [Pepper Spray and In-Custody Deaths](). Granfield, Onnen & Petty, IACP Executive Brief.

1993: [Restraint Asphyxiation in Excited Delirium](). R. L. O'Halloran and L. V. Lewman, 14 Amer. Jour. of Forensic Medical Pathology 289-295. *Eleven cases of sudden death of men restrained in a prone position by police officers are reported. Nine were hogtied, one was tied to a hospital gurney, and one was manually held prone. All were in an excited delirious state when restrained. Three were psychotic and the others were acutely delirious from drugs – six from cocaine, one from methamphetamine, and one from LSD.*

1993: Death Investigator's Handbook: A Field Guide to Crime Scene Processing, Forensic Evaluations, and Investigative Techniques. Louis Eliopulos, Paladin Press, ISBN 0-87364-727-0.

1992: Positional Asphyxia During Law Enforcement Transport. Donald T. Reay, M.D., C. Fligner, M.D, A. Stilwell, M.D., and J. Arnold, 13 (2) Amer. Jour. of Forensic Medicine and Pathology (*NAME*) 90-97; PMID: 1510077.

1992: Positional Asphyxiation in Adults: A series of 30 cases from the Dade and Broward County Fla. Medical Examiner Offices, 1982-1990.  Bell, Rao, Wetli & Rodriquiz. 13 (2) Amer. Jour. of Forensic Pathology 101-107; PMID: 1510056.

1992: Final Report of the Custody Task Force, San Diego Police Dept. Krosch, Binkerd & Blackbourne. (*Often cited, but not easily available*).

1988: Law Enforcement Custody Deaths. Vance McLaughlin, Ph.D. & Bruce Siddle, 55 (8) The Police Chief (*IACP*) 38-41 (Aug. 1988).

1988: Effects of Positional Restraint on Oxygen Saturation and Heart Rate Following Exercise. Donald T. Reay, et al., 9 Amer. Jour. Forensic Medicine & Pathology (*NAME*) 16-18; PMID: 3354518.

## B. Websites

Excited Delirium - School of Medicine, University of Miami, FL.
http://www.exciteddelirium.org/

Institute for the Prevention of In-Custody Deaths, Inc., Henderson, NV.
http://www.ipicd.com/

Ms. Charly D. Miller's Restraint Asphyxia Library (*an individual's collection*).
http://www.charlydmiller.com/RA/RAlibrary.html

## 4. List of judicial decisions: *(alpha)*

Arce v. Blackwell, #06-17302, 2008 U.S. App. Lexis 20162 (Unpub. 9th Cir.).

Arnold v. City of York, #4:cv-03-1352, 340 F.Supp.2d 550 (M.D. Pa. 2004). *Parents of a mentally ill man who died, allegedly of positional asphyxia, after being taken into custody by police officers, stated a claim for violation of his civil rights by asserting that the officers, who had transported him to a hospital, handcuffed and hogtied, in a prone position, noticed his irregular breathing, but failed to adjust his position at that time.*

Campbell v. Sikes, #98-8265, 169 F.3d 1353 (11th Cir. 1999).

Champion v. Outlook Nashville, Inc., #03-5068, 380 F.3d 893 (6th Cir. 2004).

Cruz v. Laramie, #99-8045, 239 F.3d 1183 (10th Cir. 2001).

Drummond v. City of Anaheim, #02-55320, 343 F.3d 1052, cert. den. 2004 U.S. Lexis 4396 (9th Cir. 2003).

Giannetti v. City of Stillwater, #Civ-04-926, 2006 U.S. Dist. Lexis 7465 (W.D. Okla.); affirmed, 2007 U.S. App. Lexis 3638 (10th Cir.). *The undisputed evidence reflects an escalating struggle and, with the increased intensity of the risk to the officers, they responded with additional restraint. The result is tragic, but no reasonable trier of fact could attribute [her] death to excessive force at any point in the escalating struggle.*

Glasco v. Oklahoma City, #5:2004cv00019, 2006 U.S. Dist. Lexis 57592 (W.D. Okla. 2006).

Gutierrez v. San Antonio, #97-50082, 139 F.3d 44 (5th Cir. 1998).

Hill v. Carroll County, #4:06-cv-104, 2008 U.S. Dist. Lexis 38929 (N.D. Miss. 2008); prior opin. 467 F.Supp.2d 696 (N.D. Miss., 2006).

Jones v. City of Cincinnati, # 1:04-cv-616, 2006 U.S. Dist. Lexis 75430, 2006 WL 2987820 (S.D. Ohio); affirmed, #06-4528, 521 F.3d 555 (6th Cir. 2008).

Lewis v. West Palm Beach, #06-81139-Civ, 2008 U.S. Dist. Lexis 21587 (S.D. Fla. 2008).

Mayard v. Hopwood, 105 F.3d 1226 (8th Cir.1997). *Placing a person in a prone position, while wearing handcuffs and leg restraints, was reasonable as a matter of law where the person had violently resisted arrest; however*:

> "Although not every push or shove ... violates the Fourth Amendment … a police officer's slapping in the face and punching in the chest a handcuffed and hobbled prisoner while using a racial epithet are actions that result in a cognizable constitutional injury. These actions are of such a nature that we find that a constitutional injury is presumed to flow from the wrong itself."

McIntire v. City of Boulder, #01-1560, 61 Fed. Appx. 639 (Unpub. 10th Cir. 2003). *The deceased expired from "cardiopulmonary arrest due to positional asphyxia associated with physical restraint and multiple drug ingestion" (cocaine and LSD). Summary judgment for defense was appropriate because the death occurred before Cruz v. Laramie was decided.*

Nelson v. County of Los Angeles, #B161431, 113 Cal.App.4th 783, 6 Cal.Rptr.3d 650 (Cal. App. 2003).

Phillips, Estate of v. Milwaukee, 123 F.3d 586 (7th Cir. 1997). *Two officers attempted to restrain an obese man exhibiting psychiatric problems; officers continuously monitored his condition, and when he ceased breathing, they began resuscitation efforts and revived him. The court held the officers' conduct to be objectively reasonable, because merely "restraining a person in a prone position with constant monitoring, cannot be characterized, in itself, as 'deadly' force."*

Price v. County of San Diego, Civ. #94-1917, 990 F. Supp. 1230 (S.D. Cal. 1998); prior decis. at 165 F.R.D. 614 (1996).

Reddick v. Bloomingdale, # 96-cv-1109, 2001 U.S. Dist. Lexis 9619 (N.D. Ill. 2001).

Richman v. Sheahan, #07-1487, 512 F.3d 876 (7th Cir. 2008).

Sims v. Greenville County, #99-1732, 2000 U.S. App. Lexis 6846 (Unpub. 4th Cir. 2000).

Wagner v. Bay City, #99-40175, 227 F.3d 316 (5th Cir. 2000).

Watkins v. New Castle County, Civ. #03-791, 374 F. Supp.2d 379 (D. Del. 2005).

Weigel v. Broad, #05-8094, 2008 U.S. App. Lexis 21877 (10th Cir. 2008).
Zuchel v. C&C of Denver, 997 F.2d 730 (10th Cir. 1993).

---

**AELE Monthly Law Journal**
Wayne W. Schmidt
Associate Police Liability Editor
P.O. Box 75401
Chicago, IL 60675-5401 USA
E-mail: wws@aele.org
Tel. 1-800-763-2802

© 2009, by the AELE Law Enforcement Legal Center

Contents may be downloaded, stored, printed or copied,
but may not be republished for commercial purposes.

---

AELE Home Page --- Publications Menu --- Seminar Information